Patterson et al. *v.* Hubbard et al.

---

JOEL PATTERSON *et al.*, Appellants, *v.* EBENEZER HUB-
BARD *et al.*, Appellees.

APPEAL FROM FULTON.

Where the owner of a tract of land includes a portion of the adjoining quarter-section in his field, by mistake, and afterwards accepts a lease from the claimant of the adjoining quarter, of ten acres therein, which ten acres are not specially designated by the lease, this is not a possession of the quarter section by the claimant.

The lease is void, because the ten acres mentioned in it cannot be identified.

The possession of the tenant cannot avail the landlord, to any greater extent than it would the tenant, if he was claiming and holding for himself.

A verdict, in an action of ejectment, that " it is considered by the court that the issues are for the plaintiff," is substantially defective in not stating what estate is in the plaintiffs.

A judgment that " the plaintiffs have a fee simple title to the premises," is erroneous, when a portion of the plaintiffs are tenants by the courtesy only.

A notice, that the plaintiffs " will, on such a day, etc., at the office of Samuel McCreary, in the town of, etc., take depositions,"—the depositions being taken before Samuel McCreary, as justice of the peace—is sufficient to entitle them to admission.

14

THIS was an action in ejectment at the September term, 1861, of the Fulton Circuit Court, by appellees, Ebenezer Hubbard, Anthony VanDoon, and Betsy VanDoon his wife, Luther Field, and Sarah Field his wife, Samuel A. Benton, and Eliza A. Benton his wife, William Nutting, Jr., Charles Nutting, Rufus Nutting, George B. Nutting, David H. Nutting, and Mary O. Nutting, as plaintiffs, against Joel Patterson and John Patterson, appellants, but defendants below, for the north-east quarter Section 20, Township 6 north, Range 2 east.

The declaration, which contains but one count, and that claiming the whole tract in fee simple in the "said plaintiffs" below, was served on the 27th day of September, 1861, and filed, and a rule to plead entered the same day.

The general issue was pleaded by the defendants below, Oct. 8, 1861.

At the September term, 1862, and before the cause came on for trial, the defendants below moved the court to suppress the depositions of Lewis Horton, DeWitt C. Johnston, and John Sellers, for want of sufficient notice of the taking of same, and because the notice did not specify any officer before whom the depositions would be taken. The notice was, "That I shall, on the 15th, 16th, and 17th days of May, 1862, commencing at 9 o'clock A. M. of each of said days, at the office of Samuel McCreary, in the town of Rushville, in the county of Schuyler, and State of Illinois, take the depositions," etc. The depositions were taken before Samuel McCreary, as justice of the peace.

The court overruled the motion to suppress; to which defendants below then and there excepted.

Afterwards, and at the same September term, 1862, the cause coming on for trial, the parties waived a jury and put themselves on the court for trial, C. L. HIGBEE, Judge, presiding.

The plaintiffs below called *Gabriel Baughman* as a witness, who testified as follows: The N. E. 20, 6 N., 2 E., in Fulton county, adjoins my farm, on which I now live and have lived for many years. I lived on this farm of mine in the spring of 1860, and before then. In 1850, I was in possession of a little

strip off one side of the quarter in controversy, (N. E. 20, 6 N., 2 E.) This strip was about four rods long and about a rod wide. In March, 1850, I had it fenced in with my land. The lease now produced I took from Silas Hubbard, which I saw him execute. [The lease referred to, bears date March 5, 1850, and is from Silas B. Hubbard, of Schuyler county, to Gabriel Baughman, of Fulton county, and witnesses, that Baughman "agrees with Hubbard to break and fence and cultivate ten acres, more or less, on the N. E. 20, 6 N., 2 E. ; that said Baughman also agrees to pay, as rent for the use of said field, fifty cents per acre per year for the term of ten years ; that said Baughman further agrees with said Hubbard, that he will not transfer his right to said field to any other person ; and said field is to be left in good order with the fence and anything thereon rented for the use of said Hubbard ; that said Baughman further agrees with said Hubbard, that he will not cut any tree on said quarter section, nor let any other person, only within the improvement above named ; and further to give possession at any time said Hubbard may sell or want the same." Said lease bears the signatures of both said parties.] Said witness, Baughman, further testified : I was in possession when I took the lease of the strip spoken of, by having inclosed so much of that quarter, by fence, with my field adjoining. The balance of the quarter was vacant and unoccupied, and so continued until after Dr. Hull took possession, in August, 1857, in which month I moved off my fence. Dr. Alexander Hull, who then claimed to own the land, told me to move my fence off his land, and I did so. He said he had title to the land. There were no other improvements on the land in controversy. I told Hull I held this strip under a lease from Hubbard.

On cross-examination by defendants below, this witness testified as follows : The way I took possession of this strip of land, on the quarter in controversy, was this: Before 1850, when I was fencing my land, I took in this strip by mistake, supposing I was putting the fence on the line between my land and this quarter in controversy. Afterwards, and before I took the lease, I found my fence was over the line, and I sup-

posed took in about an acre and a half of the land in contro-versy, until some years afterwards a survey was made, and it turned out that I had in my inclosure off one corner of the land in controversy this strip of four rods long and about a rod wide. I had no intention of taking possession of any of the land, on the quarter in question, when I put my fence there, but I found I had done so, and then took the lease of Hubbard. It was the agreement between Silas Hubbard and myself, both before and after the lease, not to make any im-provement on the land in controversy. He said he had a tax title, and wanted me to take a lease, hold possession, for him, of the tract, and watch the timber—that was all. I never made any further improvements on the land in question, nor were any further improvements of any kind put upon it by any person until Dr. Alexander Hull put some on it after he took possession in 1857. From the date of the lease I held the land under the lease, looked after the timber, and claimed possession under Hubbard until 1857. Dr. Hull, and those holding under him, have since improved the quarter. Hubbard never followed up the possession by making any more improvements, but sometimes came to look after the land.

The plaintiff below then offered and read in evidence the said lease from Hubbard to Baughman, above referred to; to the reading of which in evidence defendants below objected at the time when offered, but the court overruled the objection and permitted the lease to be read in evidence; to which defendants then and there excepted.

The plaintiffs below then offered and read in evidence a deed for the whole of the quarter in controversy, from the auditor of public accounts of the State of Illinois, to David Thompson, dated the 17th day of May, 1839, reciting the auditor's sale of said land, January 14, 1833, for the taxes, etc., of 1832.

The plaintiff below then offered in evidence a quit-claim deed from David Thompson to Silas B. Hubbard, conveying the land in controversy, dated the 15th of February, 1838. To the reading of which deed in evidence the defendants be-

low objected, but the court overruled the objection and permitted said deed to be read in evidence, which was done; to all which defendants below then and there excepted.

Plaintiffs below then offered in evidence seven tax receipts, running to Silas B. Hubbard, for the taxes on the land in question, for the years 1850 to 1856 inclusive; to the reading of which in evidence the defendants objected generally for irrelevancy, but the court overruled the objection and permitted the said receipts to be read in evidence, which was done; to all which the defendants below then and there excepted. Defendants, however, admitted the official character of the parties signing the receipts, and that the signatures were genuine.

The plaintiffs below then offered in evidence a deed from the sheriff of Fulton county, Illinois, to Silas B. Hubbard, for the whole tract in controversy, dated March 23, 1840, reciting the sale of 1841, for the taxes, etc., of 1840. The defendants below objected to the reading of said deed in evidence, unless the prerequisites of the law as to tax sales and tax deeds be first shown, but the court overruled the objection and permitted the deed to be read in evidence as " claim and color of title," which was done; to all which the defendants below did then and there except.

Plaintiffs below then offered in evidence the depositions of Lewis Horton, DeWitt C. Johnston, and John Sellers, taken May 15, 1862, as follows:

*Lewis Horton*, in his deposition, testified: I live in Littleton, Schuyler county; was acquainted with Silas B. Hubbard eighteen years or more; he was single and unmarried, and is dead, and buried in Littleton; he died in the summer three years ago. I assisted in the burial of his remains. I lived about two miles from him; he died without making any will. He moved from Henderson or Mercer county, Illinois, before he moved to Schuyler.

*De Witt C. Johnston*, in his deposition, testified: I reside in Rushville, Schuyler county, Illinois. I am now clerk of the County Court of said county, and was county judge in the years 1859, 1860 and 1861. I was acquainted with Silas B.

Hubbard from 1854 till his death ; he left no will, to my knowledge.

*John Sellers*, in his deposition, testified : I reside in Schuyler county. I had known Silas B. Hubbard twenty years or upwards at the time of his death; he resided between one-half and three-fourths of a mile from me; I understand he lived in Mercer county, Illinois, before he moved to Schyuler county ; he was called a bachelor ; I never heard of his having been married. I assisted in depositing his remains in the coffin, and was at his burial, in May or June, 1859. I never heard of his having made a will. I have heard Hubbard speak of having a brother by the name of Ebenezer, and of a Van Doon marrying a sister, and of the Nutting family as nephews and neices by a deceased sister.

The plaintiffs below then offered and read in evidence the deposition of *William Nutting, Sr.*, who testified as follows : I am eighty-two years old, an attorney by profession, and live in Orange county, Vermont, where I have resided over fifty-five years past ; know plaintiffs in this suit; I have known Silas B. Hubbard, who resided for some years past in Illinois, and who died there as I am informed, three years ago this summer, and left neither wife nor children ; he never had a wife or child. I was acquainted with said Silas' father and mother. They are both dead; his father has been dead between sixty and seventy years, and his mother some twenty years. Their children were Silas B., David, Ebenezer, and Charles. David and Charles died before Silas B. ; David died many years ago, and in parts unknown to me, and was never married, having no children. Charles died within a few years in this State, and left one child, Sarah, who is since married, as I am told, to a man by the name of Field, with whom I am not acquainted. There were three daughters, sisters of said Silas B.—Mary, Sarah, and Betsey. Sarah died at my house, unmarried and childless, more than twenty years ago.

I have stated that I married Mary Hubbard in 1809. She died in September, 1847, leaving five sons and two daughters, who are still alive, viz. : Eliza Ann, now wife of Rev. Samuel A. Benton, William Nutting, Jr., Charles Nutting, Rufus

Nutting, George B. Nutting, David H. Nutting, and Mary O. Nutting. Said Silas B. Hubbard left one brother, Ebenezer Hubbard, also a bachelor, still living and childless; also one sister, Betsey, now the wife of Anthony VanDoon. Said Silas' next of kin, at his death, would be his brother, Ebenezer Hubbard, his sister, Betsey Van Doon, Sarah Field, the daughter of his deceased brother Charles, and Eliza Ann Benton, William Nutting, Jr., Charles Nutting, George B. Nutting, David H. Nutting, and Mary O. Nutting. Mary, sister of said Silas B., was my wife from 1809 till 1847, and the mother of my children above named.

And here the plaintiffs below rested their case.

The defendants below, on their part, then offered and read in evidence a deed from Alexander Hull to the defendants, dated August 27, 1857, conveying the premises in dispute.

Defendants below also offered and read in evidence tax receipts for the taxes on the land in question, for the years 1858, 1859, and 1860, the first running to J. and J. Patterson, and the others to J. B. Patterson.

The defendants below then offered and read in evidence the deposition of *Jesse K. Dubois*, auditor, etc., taken July 25, 1862, on the same interrogatories on the direct examination as those propounded in *Graves* v. *Bruen et al.*, 11 Ill. 432, in which deposition said Dubois testified as follows: My name is Jesse K. Dubois. I will be fifty-two years old next January. I reside in Springfield, Illinois. I hold the office of auditor of public accounts of the State of Illinois. I have held such office since January 12, 1857. So far as I have been able to ascertain from the books and records on file in my office, this diagram marked "A," and made a part of my answer, will show the listing of the N. E. 20, 6 N., 2 E., together with other lands, from the year 1828 to 1834 inclusive. [This diagram is certified to by the auditor, and is the same as to the classification and listing of the lands, in every material point, as that given in *Graves* v. *Bruen et al.*, 11 Ill. 434, etc., and includes the land in dispute, with other tracts. And it is the same in reference to the figures intended to indicate the taxes for the several years, no dollar or cent

marks appearing, nor anything to indicate the amount of taxes.] Said diagram is an exact copy from the tax books in my office, so far as relates to the land therein described, for the time aforesaid, and it contains everything in said books relating to the tracts of land described in said diagram for the years aforesaid. The said lands are not to my knowledge listed in any other manner in any other books or files belonging to my said office for the years aforesaid. There is no heading to the fifth column in any part of the book from which the diagram is copied. The first entry in the diagram is copied from the first page of the book, and is the first entry on said page.

In reply to plaintiffs' cross-interrogation the witness testified as follows: I have no personal knowledge of the listing of the tracts of land referred to. The knowledge I have is derived wholly from the tax books and from information given by my predecessor as auditor. I personally know that the book from which the diagram furnished is taken is preserved in my office as pertaining thereto, and am unable to state the date of my acquaintance with the same. I have been in the office of the auditor of public accounts since my inauguration as such auditor on the 12th of January, 1857, and I do not remember when I first saw said books. There are several packages of papers in the auditor's office purporting to be "affidavits of rates," "lands listed," "individual lists," etc., but I have not examined the same sufficiently to state the contents of them, and do not find the same in such condition as to be examined with reference to a particular tract without great labor and trouble.

And this was all the evidence offered in the case by either party.

The court thereupon found the issues for the plaintiffs. Whereupon the defendants below moved for a new trial, for the following reasons:

The court admitted improper evidence on behalf of the plaintiffs.

The finding was against the law and the evidence.

The finding should have been for the defendants.

But the court overruled the motion for a new trial, and rendered judgment " that the plaintiffs are seized in fee of the premises described in plaintiffs' declaration, and that they have and recover from the said defendants the possession thereof, to wit : " [describing the land,] " and the plaintiffs have a writ of possession therefor." The balance of the judgment order is for damages and costs, etc. To the overruling of which motion and the rendition of which judgment the defendants did then and there except.

The case is brought to this court by the defendants below by appeal ; and the following are the errors assigned :

The Circuit Court erred in admitting improper evidence on behalf of the plaintiffs below.

The finding of the court below was against the law and the evidence.

The Circuit Court erred in overruling the motion of defendants below for a new trial.

The Circuit Court erred in finding the fee simple in all the plaintiffs below, and in rendering judgment accordingly.

The Circuit Court erred in refusing to suppress the depositions of Lewis Horton, John Sellers and DeWitt C. Johnston.

The Circuit Court erred in rendering judgment for the plaintiffs below.

The record and proceedings are otherwise erroneous, informal and insufficient.

JUDD, BOYD & JAMES, for Appellants.

I. 1. The appellees, as plaintiffs below, based their case and recovered on the theory of the case of *Hinchman* v. *Whetstone*, 23 Ill. 185, that a right to land acquired by limitation, under claim and color of title, is affirmative, and may be enforced. The right set up is claimed to have been acquired under the first section of the limitation law of 1839.

The only possession shown was that of a strip off one corner of the land, "four rods long and about a rod wide," taken by Baughman (who had land adjoining) by mistake and under no claim, and the subsequent leasing (in March, 1850,) by Hub-

bard to Baughman, of "ten acres on the" quarter, without fixing the locality of the ten acres. No improvement whatever was made by or under Hubbard, and it was expressly agreed between Hubbard and Baughman, both before and after the leasing, that the latter was to make no improvement on the land. There was no open, notorious, or visible possession at all, by or under the appellees or their ancestor, through the lessee or otherwise, shown by the evidence.

The evidence shows no such "actual possession" as contemplated by the first section of the limitation law of 1839. In the *Hinchman* v. *Whetstone* case, the possession shown was complete from 1837 to 1852, and renewed in 1856.

2. To constitute possession of land there must be some unequivocal act of ownership on the land itself; the possession must be taken in good faith, and the land appropriated to individual use in such a manner as to apprise the neighborhood of its locality that it is in the exclusive use and enjoyment of another. Such possession must be open, notorious and visible. *Brooks* v. *Bruyn*, 18 Ill. 542; *Dill* v. *Hubbard*, 21 Ill. 328; *Brooks* v. *Bruyn*, 24 Ill. 380; *Meredith* v. *Pearl*, 10 Peters, 413; *Wickliff* v. *Ensor*, 9 B. Monroe, 258; *Buford* v. *Cox*, 5 J. J. Marshall, 443; *Little* v. *Downing*, 37 N. H. 367.

3. It is not to be supposed that an individual can, under claim and color of title, by some trifling improvement, appropriate to himself a large and unusual body of land, or could maintain an actual possession by entering upon the land and doing some useless thing with the intention of excluding others, and not of permanently improving and using the land; or that possession by entry and improvement may not be lost by laches. *Brooks* v. *Bruyn*, 18 Ill. 542, 543; *Same* v. *Same*, 24 Ill. 380.

4. Where a tenant enters upon a portion of a tract of land under a lease of the whole, then the possession of a part would be the possession of the whole; but if the lease be for only a part, prescribing the boundaries, then the possession of the tenant extends only to that portion actually occupied. The leasing of a part is certainly no greater act of dominion than a sale of

the same part would be. The possession of the tenant cannot avail the landlord to any greater extent than it would the tenant, if he were claiming and holding for himself. *Messengill* v. *Boyles*, 11 Humphrey, 112; *Ross* v. *Coff*, 9 Yerger, 463; 10 Peters, 444.

5. If Baughman had gone into possession under his lease of ten acres (which he did not), it must have been presumed that he entered and possessed according to his right of possession; and if he had entered upon any part of the quarter not covered by the lease, he would have been as much a trespasser as any other person. It would not be possible to give to his rightful possession of ten acres, a constructive possession of land, for entering upon which he would be a trespasser. *McClung* v. *Ross*, 5 Wheaton, 121, 123, 124.

6. Where a party purchases a portion of an entire tract of land, and there is an agreement by the vendee to hold possession of the remaining portion for the benefit of the vendor, the possession of the vendee cannot, under such agreement, enure to the benefit of the vendor and be construed as the possession of the vendor. *McClung* v. *Ross*, 5 Wheaton, 121, 123, 124.

7. The ten acres mentioned in the lease cannot be found or identified; hence the lease is void. *Carter* v. *Barnes et al.*, 26 Ill. 454.

II. The auditor's deed to David Thompson can be of no avail to the appellees in this case, for the reasons following: First, the auditor's deed to Thompson was over a year after the latter quit-claimed to the appellee's ancestor. Thompson's deed to Hubbard having been by quit-claim, the rights of the former, under the auditor's deed, would not enure to the latter. *Frink* v. *Darst*, 14 Ill. 309. Secondly, the auditor's deed was impeached by Dubois' deposition, showing no proper listing of the land, and showing also no dollar and cent marks, indicating the amount of the taxes, (*Graves* v. *Bruen et al.*, 11 Ill. 432), and hence Thompson's deed can only avail as "claim and color of title."

III. The declaration claims the land "in fee simple" in all of the plaintiffs below, and the judgment follows the decla-

ration, finding the fee in all the plaintiffs below, while the proofs show that three of the plaintiffs have no interest save as husbands of three of the heirs. The plaintiffs must recover according to the case made in their declaration, or not at all. *Ballance* v. *Rankin*, 12 Ill. 420.

IV. 1. The proofs show that the plaintiffs are at most, and in any event, only entitled to the possession, and that they do not hold the fee simple estate. Hence, under the declaration, the judgment is erroneous in this regard. *Ballance* v. *Rankin*, 12 Ill. 420; *Hinchman* v. *Whetstone*, 23 Ill. 189.

2. An estate in fee simple means a perfect title. It "is the entire and absolute interest and property in the land; from which it follows that no one can have a greater interest." 1 Cruise's Digest, title Estate in Fee Simple, 844; *Frink* v. *Darst*, 14 Ill. 309 ; 2 Black. Com. 106 ; 4 Kent's Com. 5.

V. 1. The finding or verdict did not specify the estate established on the trial. This is fatally erroneous. Rev. Stat. 1845, 207, sec. 24, clause 7; *Rawlings* v. *Bailey et al.*, 15 Ill. 178.

2. The fact that the trial was by the court does not alter the matter. This was the case in *Rawlings* v. *Bailey et al.*, above cited. The court could not know from the verdict what judgment to render. *Rawlings* v. *Bailey et al.*, 15 Ill. 179.

VI. There was no proof connecting Luther Field, named in the declaration, with the plaintiffs' case. There was no proof showing who was the husband of Sarah Field.

VII. The depositions of Norton, Johnston, and Sellers, should have been suppressed. The notice of taking the same did not specify any officer by or before whom the depositions would be taken. Rev. Stat. 1845, chap. 40, sec. 11.

W. A. Hinman, and L. W. Ross, for Appellees.

I. This case is brought to review the case in 23 Ill. 185 ; and the evidence in the case warrants the finding of the court, viz.: Possession of premises by ancestor, through Baughman, the tenant. Under lease, under deed to landlord, under

auditor's deed to Thompson, and under deed from Thompson to ancestor. Payment of taxes by ancestor seven successive years during occupancy.

If the evidence sustains the first point, the defendants in error are estopped from gainsaying the plaintiffs' title. 23 Ill. 185.

II.   The possession of the land, under the lease, under the title, under the ancestor's deed, or the color of title under the sheriff's deed, and payment of taxes during the seven years of possession, is a title within the 23rd of Illinois, to authorize the recovery by the heirs-at-law, of the landlord; and the defendants in error are estopped from gainsaying such title, and from setting up an adverse title thereto.

III.   The title in intestate, under the auditor's deed, as given in evidence, was title in the landlord, that enured to plaintiffs as heirs-at-law, and is not avoided by the deposition of the auditor as in the case of Bruen and Graves.   See cross-examination of auditor.

IV.   The court did not admit improper evidence on the part of appellees.

1.   To effect the finding of the court.

2.   There is sufficient evidence to sustain plaintiffs' right of recovery, beyond any evidence improperly admitted; and the court will not set aside a verdict on account of improper evidence being admitted, provided there is sufficient without it to authorize a recovery.   1 Taunt. 12.

V.   Under the limitation law of 1839, it is not requisite to sustain the sheriff's tax deed, to prove the compliance with the prerequisites, to sustain the color of title.

VI.   The landlord (intestate and ancestor of plaintiffs) entering under the tax title deed, holding the possession thereof for seven years, and paying the taxes during that time, as in this case, made title to authorize a recovery of the land, being ousted after such seven years possession.

As to possession, see 24 Ill. 372; 23 Ill. 193; 21 Ill. 178; 22 Ill. 610.   As to payment of taxes, see 23 Ill. 185; 19 Ill. 183.   Rev. Laws, chap. 24, sec. 9.   1 Taunt. 12, 3 East.

CATON, C. J. This was an action of ejectment, and the plaintiff relies on possession, under claim and color of title, with payment of taxes for seven years. We think the plaintiff failed in making out possession to the premises in question, either actual or constructive, under his claim of title. To show possession, he relies upon the testimony of Mr. Baughman, who states that he owned an adjoining lot, which he inclosed in March, 1850, and by mistake extended his fence over so as to include in his inclosure a strip of this quarter, four rods long and one rod wide. Afterwards—and we may assume after the mistake was discovered—he took a lease from Hubbard, the ancestor of the plaintiffs, and under whom they claim, for ten acres in this quarter, but without designating what ten acres. He states that he never took possession of ten acres of the quarter, nor did he make any improvement, or do any act under the lease except to retain the possession of the four rods within his inclosure, until Dr. Hull took possession of the quarter, in August, 1857, when the witness moved off his fence. Up to that time no possession had been taken of, or improvement made upon, the quarter, by any one, except the inclosure of the four rods by the witness. This, we think, did not constitute a possession of the quarter by Hubbard. Upon its face the lease was void, for want of a location of the demised ten acres. This possibly might have been helped out, had the witness taken possession of ten acres with the assent of Hubbard. But this he certainly never did. But even if he had done this, such possession could never have been extended, by construction, over the whole quarter, because by the very terms of the lease, his possession and right of possession were limited to the ten acres. The only part of the lease which in any way refers to the balance of the quarter, is a clause by which the witness agreed not to cut himself, or permit others to cut, trees on other portions of the quarter; but it does not appear that he ever prevented anybody from cutting, or that anybody ever offered to cut trees on any part of the premises. The plaintiff can claim no more benefit from the possession of the witness, than the witness could were he

claiming rights under it for his own benefit; and there would hardly be a pretense that he could claim the constructive possession of the whole quarter, because he had by mistake of the line included within his inclosure four rods of it.

There are some other errors assigned which we think are fatal, although they have occurred no doubt from inadvertence. The finding of the court is this: "It is considered by the court that the issues are for the plaintiffs." This verdict is substantially defective in not stating what estate is in the plaintiffs. The judgment is, that the plaintiffs have a fee simple title to the premises. Admitting the plaintiffs' right to recover, a part of them are tenants by the courtesy only.

We think the court decided properly in overruling the motions to suppress depositions.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*